UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| TELEPHONE INVESTMENTS USA, INC.<br><br>    Plaintiff,<br><br>v.<br><br>LUMEN TECHNOLOGIES, INC., f/k/a CENTURYTEL, INC.<br><br>    Defendant. | No.<br><br>Judge |

**COMPLAINT FOR INJUNCTIVE RELIEF**

For its Complaint against Defendant Lumen Technologies, Inc. ("Lumen"), Telephone USA Investments, Inc. ("Telephone USA Investments") states:

## I.     Jurisdiction and Venue

1. This court has original jurisdiction under 28 U.S.C. 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. Lumen is a Louisiana corporation with its principal place of business located in Louisiana. Telephone USA Investments, Inc. is a Delaware corporation with its principal place of business in Illinois.

2. This court has personal jurisdiction over Lumen Technologies because Lumen has done business in the district, including maintaining a permanent location at 10 LaSalle Street, Chicago, IL 60603.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred within the district.

4. An actual case or controversy has arisen between the parties, as discussed below.

## II. Background

A. Introduction

1. In the late 1990s, Telephone USA Investments, a female and minority-owned enterprise, secured the exclusive right to purchase from GTE North Incorporated ("GTE") telecommunications assets in Wisconsin. At the time, there was a well-known and striking absence of minority representation in the telecommunications industry. The owners of Telephone USA Investments held numerous meetings with GTE, federal officials, policy advocates, and potential investors about the public interest benefits of GTE selling its lines to Telephone USA Investments and the importance of ensuring minority ownership and representation in the telecommunications industry.

2. In August 1999, Telephone USA Investments partnered with Lumen (then known as CenturyTel, Inc.) and two individual investors—Dr. Claude B. Minor, Jr., and Dr. Bobby R. Cunningham, both minorities—to form Telephone USA of Wisconsin, LLC ("Telephone USA of Wisconsin"). The newly formed company then struck a deal with GTE to purchase the Wisconsin telecommunications assets, contingent upon Federal Communications Commission ("FCC") approval. To secure that approval, the members of Telephone USA of Wisconsin set up the company as a minority-controlled business, even though Lumen initially held an 89% stake. After the FCC approved the sale, the transaction closed on September 29, 2000. Telephone USA of Wisconsin became the provider of local exchange, long distance, and Internet service to more than 60,000 customers in 35 exchanges in rural Wisconsin.

3. As part of a restructuring of Telephone USA of Wisconsin, its members formed a holding company, TelUSA Holdings, LLC ("TelUSA Holdings"), on July 17, 2002. On that date, the members exchanged their respective Class A voting and Class B non-voting membership

interests of Telephone USA of Wisconsin for a corresponding number of Class A voting and Class B non-voting membership interests of TelUSA Holdings. With the acquired shares, TelUSA Holdings became the owner of Telephone USA of Wisconsin and, indirectly, the assets acquired from GTE.

4. Despite holding only 11% of the shares, Telephone USA Investments, Dr. Minor, and Dr. Cunningham controlled TelUSA Holdings and, in turn, Telephone USA of Wisconsin, through their ability to appoint a majority of the TelUSA Holdings board of directors. Under the TelUSA Holdings' operating agreement ("Agreement," attached as Exhibit A), Telephone USA Investments and the individual members held all the voting shares, while Lumen held only nonvoting shares. Though its shares were nonvoting, Lumen was entitled to name two of the TelUSA Holdings five board members, with the minority members retaining the right to name the other three directors.

5. In 2018, Lumen bought the 1% interest of the two individual shareholders without formal notice to Telephone USA Investments and without its approval, in violation of the TelUSA Holdings operating agreement. By failing to follow the operating agreement, Lumen gained the economic interests, but not the voting rights, of the individual shareholders. As the sole Class A Voting Share Member, Telephone USA Investments thus acquired the right to appoint three board directors, instead of two.

6. Since its inception, TelUSA Holdings has contracted with Lumen to operate Telephone USA of Wisconsin, albeit under the control of the TelUSA Holdings' board. . Indeed, unknown to Telephone USA Investments until recently, Lumen has been acting to the detriment of Telephone USA Investments by Lumen's:

   a. failure to cause the board to make distributions from the TelUSA Holdings' cash periodically, and at least annually since December 2019, as required by the

        Agreement;

    b. mismanagement of the TelUSA Holdings' financials, including by failing to accurately report the TelUSA Holdings' revenue and expenses;

    c. exercising control over the TelUSA Holdings' operations and finances in excess of authority granted under the Agreement;

    d. failure to hold regular board meetings as required by the Agreement;

    e. And improper allocation of expenses to TelUSA Holdings, including by charging it for items without board approval; and

    f. improper movement of broadband business and revenue from Telephone USA of Wisconsin to Lumen's wholly owned subsidiary without the requisite approval, causing underreporting of the TelUSA Holdings' revenue.

7. Telephone USA Investments believes that these actions have deprived it of millions of dollars in profits. Over the past few years, Telephone USA Investments has pressed Lumen to abate its oppressive behavior and pay Telephone USA Investments its rightly earned share of profits from the operation of Telephone USA of Wisconsin. Unfortunately, Lumen has refused to pay Telephone USA Investments its fair share of the profits or to provide an accounting of its actions so that Telephone USA Investments can calculate its loss.

8. The purpose of this litigation, however, is not to allow Telephone USA Investments to recover its losses from Lumen's mismanagement or self-dealing. The Agreement requires those claims for damages to be arbitrated. Consequently, Telephone USA Investments is seeking those damages through arbitration against Lumen. On December 8, 2021, Lumen initiated arbitration and, after answering Lumen's claims, Telephone USA Investments counterclaimed. (Lumen's claims and Telephone USA Investments' answer and counterclaims are attached as Exhibits B, C, and D, respectively. Telephone USA Investments incorporates its allegations and admissions from those pleadings as if alleged here.)

9. Rather than seek damages, Telephone USA Investments only seeks equitable

relief here under this provision in the Agreement, Section13.11(b):

> Notwithstanding the terms of the foregoing paragraph, any party facing irreparable harm shall be entitled to seek injunctive and other forms of equitable relief from any court of competent jurisdiction (*whether during the pendency of any arbitration proceedings or otherwise*) to prevent nonperformance or breach of one or more agreements or covenants set forth herein, and to enforce specifically the terms and provisions hereof, without the necessity of posting a bond or other security as may be required by applicable law. [Emphasis added.]

B. Lumen's Sale to Connect Holding

10. Last year, Lumen announced the sale of its interests of all its telecommunication assets in 20 states, including broadband assets, to Connect Holding, LLC ("Connect Holding"), an affiliate of Apollo Global Management, Inc. ("Apollo"). Under the TelUSA Holdings operating agreement, members may only sell their *economic* interests (as opposed to voting rights) to outside parties. Consequently, Lumen has agreed to sell only its economic interest in TelUSA Holdings to Connect Holding.

11. In their application seeking FCC approval for the deal, the parties maintain that the transaction serves the public interest because it will mean more available and better broadband technology for consumers:

> The proposed transaction will serve the public interest. Apollo believes that expanding the availability of fiber in the Acquired Companies' footprint will revitalize these assets, which have been losing ground to other broadband providers. The Acquired Companies currently offer broadband service using fiber-to-the-premises ("FTTP") to only 3% of residential households and 6% of business locations in their 20-state footprint. Consummation of the proposed transaction will provide substantial capital and managerial resources to expand availability of symmetrical gigabit FTTP broadband in that service area. The percentage of households in the Acquired ILECs' footprint that are rural is more than double the distribution in the U.S. as a whole, and the planned fiber upgrade will include a substantial number of these rural areas. Better, faster service will lead to a better customer experience and increased value for consumers.

(Application attached as Exhibit E.)

13. With broadband being the focal point and driving the Apollo transaction, Lumen has pirated the broadband assets from Telephone USA of Wisconsin into a Lumen subsidiary. Telephone USA Investments recently learned that Telephone USA of Wisconsin currently records no revenue for end-user broadband services because Lumen has moved the retail broadband revenues to its wholly owned subsidiary, CenturyTel Broadband Services, where Lumen records broadband revenues for its wholly owned operating companies. It is unclear when Lumen made this change, but it is abundantly clear that this movement of assets and business lines out of Telephone USA of Wisconsin and into a Lumen subsidiary was not authorized.

14. The broadband network used by CenturyTel Broadband Services to serve customers in Telephone USA of Wisconsin's service area was built by Telephone USA of Wisconsin and remains an asset of Telephone USA of Wisconsin. Telephone USA of Wisconsin is being charged reserves related to the Connect America Fund, and the revenues generated by that asset must be accounted for, for the benefit of Telephone USA of Wisconsin, historically and moving forward. CenturyTel Broadband Services does not have its own network facilities and pays Telephone USA of Wisconsin approximately $4 million per year for access to Telephone USA of Wisconsin's broadband network—far less than the retail broadband revenue that, upon information and belief, is growing each year.

15. Upon information and belief, Telephone USA of Wisconsin's net income decreased from approximately $17.8 million in 2018 to $11.8 million in 2019, an approximately 34% decline. The reasons for this 34% reduction in net income in a single year are unclear and need to be explained. Based on Lumen's reported retail broadband revenues and broadband penetration rates in Telephone USA of Wisconsin's service area, Telephone USA of

Wisconsin's broadband revenues might have been approximately $12 million more per year for 2019, 2020, and 2021, more than making up for the net income reduction.

16. Under the Agreement, there is no basis for allowing Lumen to divert Telephone USA of Wisconsin's revenues to Lumen's wholly owned subsidiary or record those revenues for CenturyTel Broadband Services, and Lumen has caused the company to engage in a line of business outside of its sole business purpose without the approval of Telephone USA Investments.

17. Lumen's arrangement wherein CenturyTel Broadband Services does not have its own network facilities but reaps all the retail broadband revenue for itself and pays Telephone USA of Wisconsin a lesser amount for access to Telephone USA of Wisconsin's broadband network is a conflict-of-interest transaction under the Agreement. Lumen did not obtain the requisite approval of the LLC's members or Board to engage in this conflict-of-interest transaction and these actions are materially depleting the funds that are owed to Telephone USA of Wisconsin and Telephone USA Investments.

C. Right of First Refusal

18. Under the TelUSA Holding's operating agreement, Lumen may not sell its interest in the company to an outsider without giving Telephone USA Investments a right to buy its interest, financed by Lumen. Through a letter dated April 8, 2022, Lumen attempted to trigger Section 3.5(a) of the Agreement to force Telephone USA Investments to either buy or pass on Lumen's interest:

> If any Member (the "Selling Member") desires to sell all (and not less than all) of its Shares and such Selling Member shall have received a bona fide arm's length written offer (the "Bona Fide Offer") for the purchase of such Shares (the "Offered Shares") for cash from a Person who is not an Affiliate of the Selling Member (the "Outside Party"), the Selling Member shall give a notice ("Option Notice") to each Initial Member that owns Shares as of the date of such notice

7

(the "Remaining Initial Members") setting forth its desire to sell such Offered Shares, which notice shall be accompanied by a legible photocopy of the original executed Bona Fide Offer and shall set forth the name and address of the Outside Party *and the price and terms of such offer*.

(Emphasis added.)

19. Violating the terms of this provision, Lumen only attached a portion of its sale agreement with Apollo. More importantly, contrary to that section, the portion Lumen provided did not "set forth. . .the price and terms of such offer." Lumen proposed to sell its interest to Telephone Investments of USA for $48,017,282 cash. But the truncated Apollo agreement does not indicate that it is buying Lumen's interest in TelUSA Holdings for that amount, nor does it provide the terms of the price it might pay. Hence, Lumen has not properly triggered the right of first refusal provision under Section 3.5(a).

18. Equally important, the Apollo agreement assumes that Apollo is buying the broadband assets pirated from Telephone USA of Wisconsin from another Lumen subsidiary. Until those assets are returned to Telephone USA Wisconsin, Apollo assumes it is purchasing those assets outright free of any ownership interest held by Telephone USA of Wisconsin or TelUSA Holdings.

## Claims for Relief

### Count I
### (Declaratory Judgment and Injunctive Relief)

19. Telephone USA Investments incorporates by reference the allegations contained in paragraphs 1 through 18, above.

20. Telephone USA Investments brings this cause of action under 28 U.S.C. § 2201 (Declaratory Judgment).

21. Section 3.5(c) of the Agreement provides:

> If any Member (the "Selling Member") desires to sell all (and not less than all) of its Shares and such Selling Member shall have received a bona fide arm's length written offer (the "Bona Fide Offer") for the purchase of such Shares (the "Offered Shares") for cash from a Person who is not an Affiliate of the Selling Member (the "Outside Party"), the Selling Member shall give a notice ("Option Notice") to each Initial Member that owns Shares as of the date of such notice (the "Remaining Initial Members") setting forth its desire to sell such Offered Shares, which notice shall be accompanied by a legible photocopy of the original executed Bona Fide Offer and shall set forth the name and address of the Outside Party and the price and terms of such offer.

22. Telephone USA Investments asks the court to declare that Lumen's April 8, 2022, notice did not trigger Telephone USA Investments' right of first refusal to purchase Lumen's interest in TelUSA Holdings. Specifically, the notice did not attach a bona fide offer from Apollo setting for the price and terms of Apollo's offer to buy Lumen's TelUSA Holdings economic interest. Therefore, the court should declare that any attempt by Lumen to transfer its interest to Apollo without complying with Section 3.5(a) is void.

23. Telephone USA Investments further asks the Court to enjoin Lumen from selling its interest Telephone USA Holdings to Apollo until the requirements of the Agreement are met.

## Count II
## (Injunctive Relief)

24. Telephone USA Investments incorporates by reference the allegations contained in paragraphs 1 through 23, above.

25. If the Apollo deal moves forward, the broadband assets that Lumen transferred to its subsidiary, CenturyTel Broadband Services, will be commingled with all of Lumen's other broadband assets, regardless of whether Apollo buys Lumen's interest in TelUSA Holdings. Calculating the lost value of these assets to Telephone USA Investments over time will be impossible unless Apollo accounts for revenue from the broadband assets separately from other assets. Moreover, Apollo has likely not priced those broadband assets separately from the other

Lumen assets, so evaluating their worth to ascertain damages to Telephone USA Investments will be impossible. Hence, Telephone USA Investments will suffer irreparable harm if the sale of Lumen's assets to Appollo in the 20 states is allowed to move forward.

26. The question as to whether Lumen properly transferred the broadband assets to its subsidiary is part of the arbitration between Lumen and Telephone USA Investments. If the arbitrator determines, as Telephone USA Investments believes the arbitrator should, that Lumen improperly transferred the broadband assets, then Telephone USA Investments asks the court to order the return of those assets to Telephone USA of Wisconsin. In the meantime, Telephone USA Investments requests that the court enjoin Apollo's purchase of Lumen's assets—not simply its interest in TelUSA Holdings—until the arbitrator makes that determination.

**Prayer for Relief**

WHEREFORE, Telephone USA Investments respectfully requests that the court enter judgment granting the equitable relief as indicated above, along with costs and attorney's fees and all other relief permitted by law as plaintiff may show itself to be entitled.

Respectfully submitted,

/s/ Timothy W. Wright, III
TIMOTHY W. WRIGHT III, LLC
BY: Timothy W. Wright, III (ARDC No. 6187189)
*Attorney for Plaintiff Telephone USA Investments, Inc.*

TIMOTHY W. WRIGHT III, LLC
1351 East Hyde Park Boulevard
Chicago, Illinois 60615
(773) 842-9982
twright@qpwblaw.com

Christopher L. Muzzo (Ohio Reg. No. 0068759)
The Furnier Muzzo Group, LLC
PO Box 54231
Cincinnati, Ohio 45245
(513) 708-4633
cmuzzo@furnierlaw.com