UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELEPHONE INVESTMENTS USA, INC., *Plaintiff,* v. LUMEN TECHNOLOGIES, INC., f/k/a CENTURYTEL, INC., *Defendant.* | Civil Action No. 1:22-CV-02260 |

## MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT

Defendant Lumen Technologies, Inc. f/k/a CenturyTel, Inc. ("Lumen") respectfully moves this Court to Dismiss and to Compel Arbitration[1], and in support would show as follows:

### INTRODUCTION

Rather than seek relief in the already-pending arbitration[2] between the parties, Plaintiff Telephone USA Investments, Inc. ("Telephone Investments") has sought relief in this Court, contrary to the broad arbitration agreement that governs dispute resolution between the parties. Though that agreement contains a narrow exception for irreparable harm, the exception is not triggered here because Plaintiff cannot show that it faces irreparable harm with respect to *any* of its claims. Even assuming that there were some argument that the exception might apply, that too

---

[1] By filing this Motion to Compel Arbitration and Dismiss the Complaint, Lumen does not intend to waive its objection to the exercise of personal jurisdiction over it.

[2] The arbitration was stayed at Plaintiff's request to allow it to repay the improperly paid distribution payment by May 31, 2022. *See* [16-22], [16-23]. Given that the May 31, 2022 deadline has come and gone without payment, the arbitration contemplated in the [16-23] Order will go forward, with a case management and scheduling conference set for June 7, 2022 and a final hearing scheduled in January 2023.

is a question that should be resolved in arbitration, because the arbitration agreement delegates the question of arbitrability to the arbitrators. This Court should give effect to the parties' agreement and compel the Plaintiff to arbitrate its claims, dismissing the Complaint brought in this Court.

**FACTUAL BACKGROUND**

1. *The Parties' Arbitration Agreement*

In August 1999, Telephone Investments partnered with Lumen and two individual investors to form TelUSA of Wisconsin, LLC to purchase certain telecommunications assets, eventually serving customers in rural Wisconsin. [6-1] ¶ 5, 7. In 2002, as part of a restructuring of TelUSA of Wisconsin, its members formed a holding company called Telephone USA Holdings, LLC (TelUSA Holdings), which then became the sole owner of TelUSA of Wisconsin. *Id.* ¶¶ 8–9. As part of that restructuring, the TelUSA Holdings members[3] entered into an operating agreement (the "LLC Agreement") on July 17, 2002. *Id.* ¶ 10; [5-1].

> The LLC Agreement contains an arbitration agreement for dispute resolution that provides as follows:
>
> (a) Subject to paragraph (b) below, any and all controversies or claims arising out of or relating to this Agreement, or the interpretation or enforcement thereof, shall be settled by arbitration (including the allocation of costs of any arbitration) to be held in Dallas, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The decision and award of the arbitrator shall be final and binding on all parties in interest. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.
>
> (b) Notwithstanding the terms of the foregoing paragraph, any party facing irreparable harm shall be entitled to seek injunctive and other forms of equitable relief from any court of competent jurisdiction (whether during the pendency of any arbitration proceedings or otherwise) to prevent nonperformance or breach of one or more agreements or covenants set forth herein, and to enforce specifically the terms and provisions hereof, without the necessity or posting a bond or other security as may be required by applicable law.

---

[3] In 2018, Lumen acquired the interests of the two individual investors, and now Lumen and Telephone USA Investments are the only members of TelUSA Holdings. [1 at ¶5]

2

[5-1] at 46, Section 13.11 (the "Arbitration Agreement").

2.  **The Pending Arbitration Proceeding**

In December 2021, after a dispute arose between Plaintiff and Lumen regarding an overpayment of approximately $3,145,800.00 to Plaintiff that could not be resolved through negotiations, Lumen filed a demand for arbitration pursuant to the Arbitration Agreement. *See* [1-2]. In Telephone Investments' Answering Statement, it admitted that the parties had entered into the Arbitration Agreement and that the "allegations in [Lumen's] Demand are subject to arbitration." [1-3] at 2. In addition, Plaintiff filed a Counterclaim in Arbitration and admitted that "[i]n Section 13.11 of the Agreement, all parties agreed to arbitrate 'any and all controversies or claims arising out of or relating to [the] Agreement, or the interpretation or enforcement thereof.'" [1-4] at 6.

Plaintiff's arbitration Counterclaim alleged, among other things, that "Telephone USA of Wisconsin currently records no revenue for consumer broadband services because Lumen has instead recorded Telephone USA of Wisconsin's consumer broadband services revenue through its wholly owned subsidiary, CenturyTel Broadband Services, where it records broadband revenues from its other operating companies." [1-4] at 15. Plaintiff claimed that Lumen's actions harmed Plaintiff "by reducing the amount of Available Cash that should be paid out to Telephone USA Investments through distribution" and claimed up to $8 million in damages. [1-4] at 16. Plaintiff also sought an accounting related to these allegations. [1-4] at 17.

On February 22, 2022, prior to Plaintiff's filing of this TRO, the parties agreed to stay the arbitration at Plaintiff's request, to allow Plaintiff to return the wrongfully retained distribution on or before May 31, 2022. *See* [16-1] at ¶¶ 31-32, [16-12], & [16-13].

3

3.  ***This Action***

During the dispute over the overpayment that is now one of the subjects of the arbitration proceeding, Lumen decided to sell certain telecommunications assets, including its interest in TelUSA Holdings, to Connect Holding, LLC, an affiliate of Apollo Global Management, Inc (subject to the terms of the TelUSA Holdings, LLC Agreement [16-7], which included a right of first refusal that Plaintiff has since failed to exercise). [6-1] at ¶ 11. Lumen sent Plaintiff a letter providing notice of its intent to sell on April 8, 2022, thus triggering Plaintiff's right of first refusal to purchase Lumen's interests in TelUSA Holdings. [16-1] at ¶ 35. Plaintiff took the position that the April 8 notice did not contain sufficient information to trigger its right of first refusal, and, in spite of the parties' broad Arbitration Agreement, Plaintiff filed its Complaint in this Court on April 29, 2022, seeking: "(1) a judgment declaring that Defendant's April 8 notice did not trigger its right of first refusal; and (2) to enjoin Defendant from selling its interest to Apollo." [27] (describing [1]). Shortly after filing its Complaint, Plaintiff moved for a temporary restraining order ("TRO") that sought to enjoin Lumen from selling its interest in TelUSA Holdings to Connect Holding.

After a hearing on the TRO, the Court denied the motion, finding that Plaintiff had failed to carry its burden with respect to showing imminent irreparable harm and with respect to showing it lacked an adequate remedy at law. [27]. Now, the case is ripe for dismissal as the disputes contained within the Complaint are subject to the parties' Arbitration Agreement.

## ARGUMENT

A broad Arbitration Agreement governs dispute resolution between the parties. That agreement's narrow exception for irreparable harm is not triggered here because Plaintiff cannot show that it faces irreparable harm, including as previously determined by the Court. Even if there

4

were a legitimate question about the applicability of the Arbitration Agreement's exception, which is denied, that is a matter that should be referred to arbitration because the Arbitration Agreement delegates the question of arbitrability to the arbitrators.

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract . . .to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Leaving "no place for the exercise of discretion," it further "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "It reflects a 'liberal federal policy favoring arbitration agreements' and places 'arbitration agreements on an equal footing with other contracts.'" *Stockman v. Midland Credit Mgt., Inc.*, 21-CV-5396, 2022 WL 1499811, at *3 (N.D. Ill. May 12, 2022).

The FAA provides that where a party to an agreement refuses to arbitrate a claim despite a written agreement for arbitration, the other party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "The party seeking to compel arbitration bears the burden to show an agreement to arbitrate." *Stockman*, 2022 WL 1499811, at *3. Then, *"*the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement." *Id.*

"The Court first addresses whether a valid arbitration agreement exists. State law controls the determination of this issue." *Stockman,* 2022 WL 1499811, at *4. Here, the parties have both acknowledged the existence of a binding agreement to arbitrate in the pending arbitration. Not only has Plaintiff acknowledged the Arbitration Agreement's existence, but it has embraced it by filing its own Counterclaims in the arbitration.

5

After a court determines that a valid agreement to arbitrate exists, it "next determines whether the parties' dispute falls within the agreement's substantive scope." *Blocker v. U.S. Express Enters., Inc.*, 20-CV-01633, 2021 WL 825610, at *4 (N.D. Ill. Mar. 4, 2021). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 103 S.Ct. 927, 941 (1983).

Although generally *courts* (and not arbitrators) decide "[t]he question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,'" parties can agree that those questions should instead be resolved by an arbitrator. *See Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 700 (N.D. Ill. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

Here, the Plaintiff has claimed that its Complaint seeks only "equitable relief . . . under this provision in the Agreement, Section 13.11(b)," which permits "any party facing irreparable harm" to seek limited forms of relief "to prevent nonperformance or breach of one or more agreements or covenants set forth herein." [1] at 9.[4] If the Court finds that the parties have delegated the question of arbitrability to the arbitrator, then the question of whether the Plaintiff's claims in this action fall within the scope of the arbitration clause should be decided by the arbitrator, not this

---

[4] To the extent Plaintiff's Complaint alleges that the Arbitration Agreement only covers claims for legal relief and that claims for equitable relief are excepted from its scope, that interpretation conflicts with the plain language of the Arbitration Agreement and the AAA Commercial Arbitration Rules incorporated by reference into the Arbitration Agreement. The Arbitration Agreement covers "any and all controversies or claims arising out of or relating to this [LLC] Agreement, or the interpretation or enforcement thereof. . . ." The exception applies only when a party is "facing irreparable harm" and, then, it only permits certain forms of relief to be pursued outside of arbitration. In addition, the Commercial Arbitration Rules incorporated into the Arbitration Agreement provided that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." AM. ARB. ASS'N, *Commercial Arbitration Rules and Mediation Procedures* R-47(a) (Oct. 1, 2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf; *see also id.* R-47(b) (providing that "[i]n addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards.

6

Court. However, if this Court finds that the parties have not delegated the question of arbitrability to the arbitrator, then the Court must determine whether the claims in the Plaintiff's Complaint are subject to the broad arbitration clause or fall within the narrow exception of Section 13.11(b).

A. **The Parties' arbitration agreement clearly and unmistakably delegates the question of arbitrability to the arbitrators.**

As a "threshold matter, the Court must determine whether it – or an arbitrator—has the authority to determine whether" the relief sought by the Plaintiff's Complaint for Injunctive Relief satisfies the narrow irreparable harm exception to the broad arbitration agreement. *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 808–09 (N.D. Ill. 2020). Because that agreement delegates questions of arbitrability to the arbitrator, the entire matter should be referred to arbitration and the Complaint dismissed.

Section 13.11(a) provides that, subject to the narrow exception in Section 13.11(b), "any and all controversies or claims arising out of or relating to this Agreement, or the interpretation or enforcement thereof, shall be settled by arbitration (including the allocation of costs of any arbitration) to be held in Dallas, Texas *in accordance with the Commercial Arbitration Rules of the American Arbitration Association*." [5-1] at 46, Section 13.11 (emphasis added). In other words, the broad arbitration agreement in the parties' LLC Agreement specifically incorporates the AAA Commercial Arbitration Rules by reference, and Rule 7(a) of those Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." *See* AM. ARB. ASS'N, *Commercial Arbitration Rules and Mediation Procedures*, (Oct. 1, 2013), *https://adr.org/sites/default/files/Commercial%20Rules.pdf see also Allscripts Healthcare*, 188 F. Supp. 3d at 701.

7

Courts within the Northern District of Illinois have routinely concluded that "when parties agree in a valid arbitration agreement that the American Arbitration Association's (AAA) rules apply, an arbitrator should decide the scope of arbitrability." *20/20 Foresight, Inc. v. McGuffin*, 20 C 6915, 2021 WL 619718, at *3 (N.D. Ill. Feb. 17, 2021); *see also Ali v. Vehi-Ship, LLC*, 17 CV 02688, 2017 WL 5890876, at *3–4 (N.D. Ill. Nov. 27, 2017) (where Commercial Arbitration Rules of the American Arbitration Association were incorporated by reference into the arbitration agreement, the court concluded that "the parties intended to arbitrate gateway arbitrability issues"); *In re Dealer Mgt. Sys. Antitrust Litig.*, 18-CV-864, 2020 WL 832365, at *5 (N.D. Ill. Feb. 20, 2020) (contracts incorporating the AAA rules evince "clear and unmistakable" intent that the "question of arbitrability . . . be decided by an arbitrator"); *see also Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617, *4 (N.D. Ill. 2011) (concluding that when parties incorporate the commercial rules of the AAA, arbitrability is a decision for the arbitrator).

The Court should find the same here. The arbitration agreement contained in the LLC Agreement clearly and unmistakably delegates the question of arbitrability to the arbitrator through its incorporation of the AAA rules. As a result, Plaintiff should be compelled to arbitrate the arbitrability of its claims and the Complaint should be dismissed.

**B.**   **Even if this Court were to determine arbitrability, Plaintiff cannot show it is "facing irreparable harm" as required to trigger the narrow exception provided in Section 13.11(b).**

In order to trigger the narrow exception to the broad arbitration clause contained in the parties' Arbitration Agreement, the Plaintiff must first show that it is "facing irreparable harm." [5-1] at 46, Section 13.11(b). Often considered together with the "inadequate legal remedy" element for obtaining injunctive relief, *see Moss Holding Co. v. Fuller*, 20-CV-01043, 2020 WL 1081730, at *9 n.6 (N.D. Ill. Mar. 6, 2020), irreparable harm is commonly described as "harm that cannot be fully rectified by final judgment after trial." *Ichiyasu v. Christie, Manson & Woods*

8

*Intern., Inc.*, 630 F. Supp. 340, 342 (N.D. Ill. 1986) (internal citation omitted); *see also Windy Acq., LLC v. Good Source Sols., Inc.*, 09 C 2681, 2009 WL 10714811, at *2 (N.D. Ill. June 25, 2009) ("The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages."); *Peabody v. Davis*, 05 C 5026, 2007 WL 9817825, at *3 (N.D. Ill. Mar. 30, 2007) ("If a defendant will be made whole by a judgment in its favor, then it cannot claim to be irreparably harmed by the issuance of an injunction."). Alternatively, if a plaintiff "will suffer irreparable harm in the interim," that could not be so rectified, injunctive relief is appropriate. *See Roland Mach. Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

Here, as the Court already found after a hearing [27], Plaintiff has not alleged any harm that cannot "made whole by a judgment in its favor" and thus cannot make the threshold showing of irreparable harm required to trigger the arbitration exception for either count of its Complaint.

1. *As this Court has concluded, Plaintiff has failed to show that it faces imminent irreparable harm and that it cannot be made whole by the arbitrators finding in its favor.*

With respect to Count I, which relates to the Plaintiff's right of first refusal, this Court has already concluded that Plaintiff has not shown that it cannot await a final judgment or that a damages award will be insufficient to remedy the harm. *See* [27] at 3 (citing *United Asset Coverage, Inc. v. Avaya Inc.*, 409 F. Supp. 2d 1008, 1039 (N.D. Ill. 2006)). The Court explained that, among other things, Plaintiff failed to show why "'the normal remedy for breach of contract . . . would be difficult to quantify." [27] at 3 (quoting *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996)). Because Plaintiff can be made whole by an arbitration award in its favor, it is not "facing irreparable harm" with respect to the allegations in Count I regarding the right of first refusal, and the arbitration exception is not triggered.

9

2. *Plaintiff cannot show irreparable harm with respect to Count II because damages for the underlying claim are easily quantifiable—indeed, they are already part of the pending arbitration.*

Plaintiff cannot show that it faces irreparable harm with respect to Count II, which is based on allegations that Lumen "pirated" the assets of Telephone USA of Wisconsin. *See* Compl. Dkt. 1 at ¶¶ 13, 17 and 25-26. Despite Plaintiff's claim that "calculating the lost value . . . over time will be impossible," those damages are easily quantifiable. Even by Plaintiff's own admission, CenturyTel pays Telephone USA of Wisconsin for the right to access Telephone USA of Wisconsin's customers. *See* [1] at ¶¶ 13-14. With that access, it then provides, pursuant to an administrative services agreement [16-10], certain enumerated services facilitating the delivery of broadband services to Telephone USA of Wisconsin's approximately 18,000 customers in rural Wisconsin. [16-1] at ¶ 19. The EBITDA that CenturyTel Broadband Services derives from those broadband customers is (and will remain) readily identifiable in the event that the arbitrator panel decides for Plaintiff, and – by definition – the claims are capable of determination and calculable. Indeed, Plaintiff has sought monetary damages related to such in its counterclaim in the pending arbitration. *See* Dkt. 1-4 at ¶ 67 (alleging "the funds owed to Telephone USA Investments now total over $2 million annually for the last three years, with possible distributions for prior years, for an aggregate approximated amount of at least $8 million").

Even if Plaintiff's claim had merit—which Lumen contends is wholly lacking—Plaintiff does not-- could be made whole by a judgment awarding damages for this claim. *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 945 (7th Cir. 2006) ("The normal remedy for breach of contract is an award of damages, not an order of specific performance (i.e., a positive injunction); practically speaking the duty created by a contract is just to perform or pay damages, for only if damages are inadequate relief in the particular circumstances of the case will specific performance be ordered.") (internal citation and quotation marks omitted). This Court should

reject Plaintiff's attempts to bootstrap these possible "ordinary breach of contract" claims to "the level of irreparable harm." *See NEG Micon USA, Inc. v. N. Alt. Energy*, 03 C 5851, 2003 WL 22110903, at *2 (N.D. Ill. Sept. 11, 2003) (rejecting arguments that loss in goodwill, lost opportunity to gain experience from a first-of-its-kind project in the state, and injury to reputation as irreparable harm, explaining that plaintiff appeared to be "attempting to bootstrap a possible ordinary breach of contract action to the level of irreparable harm").

C.  **This Court should dismiss the Action.**

This Court should grant Lumen's motion to compel and dismiss this Action. *See Stockman*, 2022 WL 1499811, at *7. Though the FAA provides that courts compelling arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ," *see* 9 U.S.C. § 3, a number of courts, including courts within the Northern District of Illinois, have concluded that there exists "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011). "Moreover, a number of courts within this district have found that the Seventh Circuit would recognize this judicially-created exception." *Dental USA, Inc. v. Beak & Bumper, LLC*, 13 C 2581, 2013 WL 3755415, at *2 (N.D. Ill. July 16, 2013) (listing cases). In addition to this judicially-created exception, courts within the Northern District have held that dismissal is "proper when an agreement requires arbitration in another district." *See id.* Here, Section 13.11 requires arbitration to occur in Texas – outside this district. As a result, dismissal is appropriate.

11

## CONCLUSION

In their LLC Agreement, the Parties agreed to a broad arbitration clause and delegated all questions of arbitrability to the arbitrator. As a result, this Court should grant Lumen's Motion to Compel Arbitration and to Dismiss the Complaint. Alternatively, even if the Court were to decide the threshold question of arbitrability, Plaintiff cannot show that it is facing irreparable harm, which is required to trigger the narrow arbitration exception in the Arbitration Agreement.

WHEREFORE, Defendant Lumen Technologies, Inc. f/k/a CenturyTel, Inc. respectfully moves this Court to compel Plaintiff to arbitrate its claims in accordance with the parties' agreement and to dismiss this Action.

Dated: June 1, 2022

Respectfully submitted,

**LUMEN TECHNOLOGIES, INC., f/k/a CENTURYTEL, INC.**

*/s/ Phillip S. Sykes*
Phillip S. Sykes (admitted *pro hac vice*)
BUTLER SNOW LLP
1020 Highland Colony Parkway
Suite 1400
Ridgeland, MS 39157
(601) 948-5711 Phone
(601) 985-4500 Facsimile
phillip.sykes@butlersnow.com

Emery K. Harlan
MWH LAW GROUP LLP
IL ARDC No. 6203905
180 N. LaSalle St., Suite 3700
Chicago IL 60601
(312) 734-1457 Phone
(414) 436-0354 Facsimile
emery.harlan@mwhlawgroup.com

**COUNSEL FOR
LUMEN TECHNOLOGIES, INC.,
f/k/a CENTURYTEL, INC.**

64547131.v2