UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Telephone Investments USA, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Lumen Technologies, Inc., <br><br> Defendant. | Case No. 22-cv-2260 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

This case concerns a fall-out between business partners. Plaintiff Telephone Investment USA, Inc. sues Defendant Lumen Technologies, Inc. for injunctive and declaratory relief to enforce its rights under the parties' business contract. Defendant has moved to dismiss for improper venue and to compel arbitration based on an arbitration provision in the parties' contract [28]. For the reasons explained below, this Court grants Defendant's motion and stays this case pending arbitration.

**I.   Background**

  **A.   Factual Background**

In August 1999, Plaintiff Telephone USA Investments partnered with CenturyTel (Defendant Lumen's former name) and two individual investors, Dr. Claude B. Minor, Jr. and Dr. Bobby R. Cunningham, to form Telephone USA of Wisconsin, LLC (Telephone USA). [31] ¶ 7. The newly formed company then struck a deal with non-party GTE North Incorporated to purchase GTE's Wisconsin

telecommunications assets, contingent on approval from the Federal Communications Commission (FCC). *Id.* After the FCC approved the transaction, Telephone USA became a provider of local exchange, long distance, and internet service to more than sixty thousand customers in thirty-five exchanges in Wisconsin. *Id.* The members of Telephone USA formed the company as a minority-controlled business, although Defendant initially owned an overwhelming majority (89%) stake. *Id.*

After a restructuring, Telephone USA's members formed a holding company, TelUSA Holdings, LLC (TelUSA Holdings) on July 17, 2002. *Id.* ¶ 8. As part of the restructuring, TelUSA Holdings became the owner of Telephone USA, and indirectly, the assets acquired from GTE. *Id.* Under the TelUSA Holdings' operating agreement, Defendant agreed to finance Plaintiff's purchase of Defendant's stake in TelUSA Holdings if Defendant decided to sell its interest. *Id.* ¶ 9. The Agreement also placed management of TelUSA Holdings under the control of its minority members. *Id.* Thus, despite holding only 11% of the TelUSA Holdings membership shares, Plaintiff, Dr. Minor, and Dr. Cunningham controlled TelUSA Holdings; those minority members had the power to appoint a majority of the TelUSA Holdings board of directors and to make all decisions, with limited exceptions, requiring a vote of members. *Id.* ¶ 10. In 2018, Defendant bought the 1% interest of the two individual shareholders without providing formal notice to Plaintiff. *Id.* ¶ 12. Plaintiff alleges that this transaction breached the parties' Agreement. *Id.* ¶ 13.

Plaintiff claims that, in early 2020, a series of events unfolded suggesting that Defendant may have been engaged in self-dealing. *Id.* ¶ 15. In December 2019, the TelUSA Holdings board authorized a distribution of $3,412,000.00 to its members based on their pro rata membership interests. *Id.* ¶ 16. Apparently by mistake, Defendant—acting on TelUSA Holdings' behalf—issued a check for the full $3,412,000.00 to Plaintiff. *Id.* Around that time, Plaintiff coincidentally learned that Defendant had been acting to Plaintiff's detriment for many years by treating the assets of TelUSA Holdings and TelUSA of Wisconsin as Defendant's own. *Id.* Among other things, Plaintiff learned that Defendant had: (1) failed to cause the board to make annual cash distributions, as required by the Agreement; (2) mismanaged TelUSA Holdings' financials by failing to accurately report TelUSA Holdings' revenue and expenses; (3) exercised control over the company's operations and finances in excess of its authority under the Agreement; (4) failed to hold regular board meetings as required by the Agreement; (5) improperly allocated expenses belonging to Defendant onto TelUSA Holdings, including by charging it for items without board approval; and (6) moved broadband business and revenue from Telephone USA of Wisconsin to Defendant's subsidiary without the requisite approval, causing TelUSA Holdings' revenue to be underreported. *Id.* ¶ 17. Over the next two years, Plaintiff pressed Defendant to abate its behavior and pay Plaintiff its rightly earned share of profits. *Id.* ¶ 19. Defendant has, however, refused to do so and has failed to provide an accounting of its actions. *Id.*

Then, in August 2021, Defendant announced the sale of its interests of all its telecommunications assets in twenty states to Connect Holding, LLC, an affiliate of Apollo Global Management, Inc. *Id.* ¶ 20. Plaintiff alleges that, with broadband being the focal point and driving the Apollo transaction, Defendant has pirated the broadband assets from Telephone USA into one of Defendant's subsidiaries, CenturyTel Broadband Services. *Id.* ¶ 22. According to Plaintiff, this movement of assets and business lines out of Telephone USA into CenturyTel was not authorized. *Id.*

Plaintiff also alleges that under TelUSA Holding's operating agreement (the Agreement), Defendant may not sell its interest in the company to an outsider without providing Plaintiff proper notice and a period of thirty days during which Plaintiff may exercise its right to buy Defendant's stake, financed by Defendant. *Id.* ¶ 28. Section 3.5 of the Agreement provides:

> If any Member (the 'Selling Member') desires to sell all (and not less than all) of its Shares and such Selling Member shall have received a bona fide arm's length written offer (the 'Bona Fide Offer') for the purchase of such Shares (the 'Offered Shares') for cash from a Person who is not an Affiliate of the Selling Member (the 'Outside Party'), the Selling Member shall give a notice ('Option Notice') to each Initial Member that owns Shares as of the date of such notice (the 'Remaining Initial Members') setting forth its desire to sell such Offered Shares, which notice shall be accompanied by a legible photocopy of the original executed Bona Fide Offer and shall set forth the name and address of the Outside Party *and the price and terms of such offer*. Upon delivery of such Option Notice, each Remaining Initial Member shall have a non-assignable first option to purchase such Offered Shares on a pro rata basis based upon the number of Shares owned by such Remaining Initial Member in relation to the aggregate number of Shares owned by all Remaining Initial Members, at the price and on the terms set forth in the Bona Fide Offer, which option may be exercised by giving, within 30

> days after the delivery of such Option Notice, a counter-notice to the Selling Member.

*Id.* ¶ 28 (emphasis added).

Defendant attempted to trigger Section 3.5 through a letter dated April 8, 2022, offering to sell its interest to Plaintiff for $48,017,282.00 cash. *Id.* ¶¶ 28–29. Plaintiff asserts, however, that Defendant violated the terms of Section 3.5 by attaching only a portion of its sale agreement with Apollo and failing to set forth the "price and terms of such offer" from Apollo. *Id.* ¶¶ 28–29. On April 15, 2022, Plaintiff responded to Defendant's letter, stating that Defendant's April 8, 2022 notice failed to satisfy Section 3.5's requirements. *Id.* ¶ 31. Defendant replied on April 28, 2022, contending that the thirty-day right of first refusal period had been properly triggered and that Plaintiff's rights would expire on May 8, 2022. *Id.* ¶ 31. As that time has expired, Defendant now contends that Plaintiff's right of first refusal expired and that it may now sell its interest in TelUSA Holdings to Apollo. *Id.*

### B. The Pending Arbitration

The Agreement also contains an arbitration provision, in Section 13.11, which states as follows:

> (a) Subject to paragraph (b) below, any and all controversies or claims arising out of or relating to this Agreement, or the interpretation or enforcement thereof, shall be settled by arbitration (including the allocation of costs of any arbitration) to be held in Dallas, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The decision and award of the arbitrator shall be final and binding on all parties in interest. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

5

> (b) Notwithstanding the terms of the foregoing paragraph, any party facing irreparable harm shall be entitled to seek injunctive and other forms of equitable relief from any court of competent jurisdiction (whether during the pendency of any arbitration proceedings or otherwise) to prevent nonperformance or breach of one or more agreements or covenants set forth herein, and to enforce specifically the terms and provisions hereof, without the necessity or posting a bond or other security as may be required by applicable law.

[31-1] at 46.

On December 8, 2021, Defendant initiated arbitration to redress the "clerical error" that resulted in the $3,145,800.00 overpayment to Plaintiff in late December 2019. [31-3] at 3; [31] ¶ 32. According to Defendant's arbitration petition, Plaintiff has refused to return the overpayment. *Id.* Defendant asserted claims in arbitration for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and "money had and received." [31-3] at 4–7. In response, Plaintiff counterclaimed for breach of the Agreement based on Defendant's failures to accurately and reliably report the LLC's revenues and expenses and to declare distributions of available cash; and for breach of the implied covenant of good faith and fair dealing. [32] ¶ 32; [31-3]. The final arbitration hearing is set for January 5, 2023. [39-1] at 1.

### C. Procedural History

On April 29, 2022, Plaintiff filed a complaint in this Court seeking: (1) a judgment declaring that Defendant's April 8 notice did not trigger its right of first refusal; and (2) to enjoin Defendant from selling its interest to Apollo. [1]. Plaintiff contemporaneously moved for a temporary restraining order [5]; [6], seeking to immediately enjoin Defendant from selling its interest in TelUSA Holdings to Apollo.

6

This Court held a hearing on Plaintiff's motion on May 24, 2022 and denied it on the record, [26]; the next day, this Court issued a written opinion further explaining its reasons for denying the motion, [27]. Soon after, Defendant moved to compel arbitration and to dismiss under Federal Rule of Civil Procedure 12(b)(3). [28]. After Plaintiff amended its complaint [31], Defendant supplemented its motion to account for any new allegations [35]. Plaintiff's amended complaint seeks injunctive relief in both counts. [31]. Plaintiff's claims here, unlike its counterclaims in arbitration, do not concern Defendant's alleged mismanagement or self-dealing; its claims here solely concern the Apollo deal. *Id.* ¶ 32. Defendant's motion to compel and to dismiss is now fully briefed and ripe for adjudication.

## II. Legal Standard

In 1925, Congress enacted the Federal Arbitration Act (FAA) to counter generalized judicial hostility to arbitration as an alternative to litigation and to allow agreements to arbitrate to be enforced. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA embodies a "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the FAA, a party may compel arbitration if it can demonstrate: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). The party opposing arbitration bears the burden of proving the arbitration agreement is

7

unenforceable or proving that the claims are unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *A.D.*, 885 F.3d at 1063. To meet this burden, the party opposing arbitration must also identify a triable issue of fact on the purported arbitration agreement. *Gilbert v. I.C. Sys., Inc.*, No. 19-CV-04988, 2021 WL 292852, at *2 (N.D. Ill. Jan. 28, 2021) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

## III. Analysis

This dispute centers around whether the Agreement's arbitration provision applies to the claims Plaintiff asserts in this lawsuit. But before deciding that issue, this Court must first address a threshold issue that Defendant has raised—whether the parties have agreed to delegate questions of arbitrability to the arbitrator in the first instance.

### A. Delegation Clause

Presumptively, the court, not the arbitrator, decides "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013). Despite this presumption, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). A provision to arbitrate gateway issues—also known as a delegation clause—"is simply an additional, antecedent

8

agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *see also K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (observing that "if there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator"). When parties make this clear and unmistakable delegation, a court "possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. This "is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

Courts find clear and unmistakable evidence of intent to delegate under two circumstances. First, a delegation clause explicitly conferring authority to decide arbitrability issues to an arbitrator constitutes clear and unmistakable intent to delegate arbitrability. In *Rent-A-Center*, for example, the Supreme Court held that a contract provision stating that the "Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator. 561 U.S. at 66, 72.

Second, although the Seventh Circuit has not addressed this issue, the consensus view among district courts in this circuit and among the other appellate circuits holds that reference to or incorporation of AAA rules constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator. *See Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D.

9

Ill. 2021); *20/20 Foresight, Inc. v. McGuffin*, No. 20 C 6915, 2021 WL 619718, at *3 (N.D. Ill. Feb. 17, 2021); *Wilcosky v. Amazon.com, Inc.*, No. 19-CV-05061, 2021 WL 410705, at *11 (N.D. Ill. Feb. 5, 2021); *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D. Ill. 2020); *accord Bosse v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29 (1st Cir. 2021); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020), *cert. denied sub nom. Piersing v. Domino's Pizza Franchising LLC*, 141 S. Ct. 1268 (2021); *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). This consensus view finds its roots in AAA Commercial Rule 7(a), which expressly delegates arbitrability questions to the arbitrator, as follows: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arb. Assoc., *Commercial Arbitration Rules and Mediation Procedures* 13 (2016), https://adr.org/sites/default/files/Commercial%20Rules.pdf.

**B.     The Parties Agreed to Delegate Arbitrability**

In light of the above standards, the parties have clearly and unmistakably agreed to delegate the threshold question of arbitrability to the arbitrators. Subpart (a) of the arbitration provision here states:

> (a) Subject to paragraph (b) below, any and all controversies or claims arising out of or relating to this Agreement, or the interpretation or

10

> enforcement thereof, shall be settled by arbitration (including the allocation of costs of any arbitration) to be held in Dallas, Texas in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The decision and award of the arbitrator shall be final and binding on all parties in interest. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

[31-1] at 46.

This provision—which delegates all controversies relating to the "interpretation or enforcement" of the Agreement—reflects a clear and unmistakable intent for arbitrability to be decided by the arbitrators. *See, e.g.*, *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 808 (N.D. Ill. 2020) (finding clear and unmistakable intent to delegate from a clause giving the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of the arbitration provision); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 889, 891 (N.D. Ill. 2016) (holding that language providing that matters concerning "enforceability, revocability or validity" of arbitration provision "shall be decided by an Arbitrator" sufficed to show intent to delegate arbitrability).

Additionally, consistent with the "consensus view" among federal courts, this Court finds that the parties' agreement to arbitrate pursuant to AAA Rules also constitutes clear and unmistakable intent to delegate arbitrability. *Wilcosky*, 2021 WL 410705, at *11 (observing that "the consensus view of federal case law is that the incorporation by reference of the AAA Rules is clear and unmistakable evidence of an intention to arbitrate arbitrability") (quoting *Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017)).

### C. The Carve-Out Provision

In opposing arbitration, Plaintiff points to the arbitration provisions subpart (b), which states:

> (b) Notwithstanding the terms of the foregoing paragraph, any party facing irreparable harm shall be entitled to seek injunctive and other forms of equitable relief from any court of competent jurisdiction (whether during the pendency of any arbitration proceedings or otherwise) to prevent nonperformance or breach of one or more agreements or covenants set forth herein, and to enforce specifically the terms and provisions hereof, without the necessity or posting a bond or other security as may be required by applicable law.

[31-1] at 46. This provision, Plaintiff argues, creates an exception to the prior paragraph's agreement to submit all issues—including those regarding arbitrability—to the arbitrators for complaints seeking injunctive relief. [38] at 5–6. This Court disagrees.

Several federal courts have considered similar carve-out provisions. In *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, the Fifth Circuit interpreted an arbitration provision that included a carve-out for claims of injunctive relief; that provision stated:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of Law, and may only award remedies provided for in the Provider Agreement. . . . Any such arbitration must be conducted in Scottsdale, Arizona, and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the award of the arbitrator is rendered.... Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; *provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for*

*breach of this Provider Agreement in any state or federal court of law.*

748 F.3d 249, 256 (5th Cir. 2014) (emphasis added). Although it did not specifically analyze the carve-out clause relating to injunctive relief, the Fifth Circuit held that the "express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 262–63.

In *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013), the Ninth Circuit considered the scope of an arbitration provision carving out intellectual property disputes. The relevant clause provided:

> Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, *except that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights* or with respect to Your compliance with the TCK license. Arbitration shall be administered: (i) by the American Arbitration Association (AAA), (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of California and United States. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such award.

*Id.* at 1071 (emphasis added). Like the *Crawford* court, the Ninth Circuit in *Oracle* held that, by incorporating AAA rules, the arbitration clause constituted clear and unmistakable intent to delegate arbitrability. *Id.* at 1074. Moreover, the carve-out did not negate the delegation; rather, as the Ninth Circuit reasoned, the "decision that a claim related to intellectual property rights . . . constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator." *Id.* at 1077. To hold otherwise, the court reasoned, would conflate "the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision,

13

with the question of *who* decides arbitrability." *Id.* at 1076. The court thus rejected the notion that merely by bringing an intellectual property claim, a party can avoid its contract to delegate the arbitrability of such claims to an arbitrator. *Id.* at 1075–76.

A more recent Fifth Circuit case distinguished both *Crawford* and *Oracle*: In *Archer & White Sales, Inc. v. Henry Schein, Inc.*, the court of appeals considered a carve-out provision within the following arbitration provision:

> This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association. The place of arbitration shall be in Charlotte, North Carolina.

935 F.3d 274, 277 (5th Cir. 2019). The *Archer* court distinguished this carve-out provision from the one in *Crawford*, ruling that the "placement of the carve-out here is dispositive" and that the "most natural reading of the arbitration clause at issue here states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules." *Id.* at 281. The court thus concluded that the agreement delegated arbitrability for all disputes *except* those under the carve-out (i.e., injunctive relief). *Id.* at 281–82.

The arbitration provision here is more similar to the ones in *Crawford* and *Oracle* than *Archer*. In *Crawford* and *Oracle*, the arbitration provisions delegated all disputes relating to the contracts, including those of arbitrability to the arbitrators; carve-outs within those arbitration provisions merely allowed certain claims to be

14

brought in court. So too, here. The arbitration provision in subpart (a) provides that "*any* controversies or claims arising out of or relating to this Agreement, or the interpretation or enforcement thereof, shall be settled by arbitration. . . ." [31-1] at 46 (emphasis added). This clause, in addition to the incorporation of AAA rules, clearly delegates all disputes—including those concerning arbitrability—to the arbitrators.

The carve-out clause in subpart (b), like the ones in *Crawford* and *Oracle* does not explicitly exempt claims for injunctive relief from the requirement that any controversies relating to the interpretation or enforcement of the Agreement shall be submitted to the arbitrator. Rather, like the carve-outs in *Crawford* and *Oracle*, the carve-out here exempted specified claims for arbitration but did not limit the arbitrators' exclusive jurisdiction to decide questions of arbitrability. The carve-out here simply allows a "party facing irreparable harm" to "seek injunctive and other forms of equitable relief." [31-1] at 46; *see also, e.g.*, *Blanton*, 962 F.3d at 848 (noting that, although the parties had not raised arguments about a carve-out in an arbitration provision, that to the extent an arbitration agreement carved out "certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA rules. So the carveout goes to the *scope of the agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of arbitrability.") (internal quotation marks omitted). In contrast, *Archer*'s arbitration provision limited arbitration to "[a]ny dispute arising under the agreement (*except for actions seeking injunctive relief. . .*"). 935 F.3d at 277. The arbitration provision in *Archer*, unlike the

15

one here, expressly exempted *all* disputes from arbitration where a party sought injunctive relief. *Id.*

Other persuasive authorities confronting similar carve-outs support the conclusion that the carve-out here does not exempt arbitrability questions from arbitration. In *Manlove v. Volkswagen Aktiengesellschaft*, a district court considered the following arbitration agreement, similar to the one at issue here:

> Submission to Arbitration. Any and all disputes which involve or relate in any way to Employee's employment (or termination of employment) with [VW America], whether initiated by Employee or by [VW America], shall be submitted to and resolved by final and binding arbitration. However, nothing in this Agreement shall be construed to restrict or prevent either party from pursuing injunctive relief in a court of competent jurisdiction.
>
> \*\*\*
>
> Injunctive Relief. Nothing in this agreement shall be interpreted to prevent or restrict either party from seeking provisional injunctive relief, where appropriate, in a court of competent jurisdiction. Injunctive relief includes, but is not limited to, temporary and/or permanent injunctions or restraining orders.

No. 1:18-CV-145, 2019 WL 2291890, at \*2 (E.D. Tenn. Jan. 11, 2019). In *Manlove*, after the defendant moved to compel arbitration, the plaintiff argued that he only sought only injunctive relief, and that, "by its express terms, the agreement does not apply to claims for injunctive relief, such as those brought in this action." *Id.* at \*3. The court, while noting that "there is no question Plaintiff's claims for purely injunctive relief may be brought in a court of law," nevertheless compelled arbitration due to the broad delegation clause that clearly and unmistakably delegated threshold

16

issues of arbitrability of all claims—including those for injunctive relief—to an arbitrator. *Id.* at *3.

A District of Columbia court considered an arbitration agreement providing that "any dispute or controversy between the Parties arising under or in connection with this Agreement" will be submitted to arbitration "in accordance with the Commercial Rules of the American Arbitration Association then in effect." *KONE Inc. v. Chenega Worldwide Support, LLC*, No. 20-CV-999 (DLF), 2021 WL 827163, at *1 (D.D.C. Mar. 3, 2021). The provision also contained a carve-out provision stating that the arbitration provision "shall . . . not apply to a Party's pursuit of recovery of undisputed payments due and owing under this Agreement." *Id.* The court found that the "broad language" of the provision "confirms that the parties manifested a clear and unmistakable intent to delegate arbitrability determinations to an arbitrator." *Id.* at *5. As for the carve-out, the court interpreted it as a clause that "merely constitutes a class of disputes and controversies that the parties did not agree to subject to merits arbitration." *Id.*

The above persuasive authorities confirm that the carve-out in this case refers to a class of disputes that the parties contemplated could be brought in court; it does not, however, limit the arbitrators' ability to decide threshold issues of arbitrability. Because the parties clearly and unmistakably delegated arbitrability issues, this Court lacks the authority to decide whether it can hear Plaintiff's claims for injunctive relief. That is a matter for the arbitrator to decide. *See, e.g.*, *McClenon*, 473 F. Supp. 3d at 811–12 ("[T]he Court concludes that the Fleet Agreement delegates to

the arbitrator the exclusive authority to resolve Postmates' claims that Petitioners' arbitration demands violate the Class Action and Representative Action Waivers by seeking *de facto* class arbitration. As such, the Court declines to consider the merits of the parties' arguments on that issue and leaves them for an arbitrator to resolve.").

### D. Dismissal Without Prejudice

Having decided that the parties have agreed to delegate threshold issues of arbitrability, this Court must determine whether it should dismiss this case (as Defendant requests), or alternatively, whether it should stay the case.

Under Section 4 of the FAA, a district court cannot compel arbitration outside the confines of its district. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). But while "courts cannot grant a § 4 order to compel arbitration unless they sit in the same district as the arbitration venue, a § 3 order to stay pending arbitration has no such requirement." *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods. Inc.,* 660 F.3d 988, 997 (7th Cir. 2011). For "arbitrable issues, a § 3 stay is mandatory." *Volkswagen of Am., Inc. v. Süds of Peoria, Inc.,* 474 F.3d 966, 971 (7th Cir. 2007). Because the parties' arbitration provision provides that arbitration will take place in Dallas, Texas, this Court lacks the authority under Section 4 of the FAA to compel arbitration. This Court will, however, stay this case under Section 3 pending the ongoing AAA proceedings. *See, e.g.*, *Imperial Crane Sales, Inc. v. Sany Am., Inc.*, No. 15 C 859, 2015 WL 4325483, at *6 (N.D. Ill. July 15, 2015) (staying, rather than dismissing, a case after deciding that

the parties delegated threshold arbitrability issues, and referring the arbitrability determination to a AAA arbitration proceeding the plaintiff had already initiated in Georgia).

This Court notes Plaintiff's concerns that arbitration will preclude the efficient resolution of its claims. Plaintiff seeks to enjoin the transaction between Defendant and Apollo that Defendant expects to close during the fourth quarter of this year. *See* [27] at 3. Indeed, courts necessarily face a "tension" when "forced to choose between providing preliminary injunctive relief and enforcing an agreement to delegate to the arbitrator the decision of whether preliminary injunctive relief is arbitrable." *Manlove*, 2019 WL 2291890, at *4. But this Court does not believe that arbitration will significantly delay this matter. If the arbitrators rule that Plaintiff's claims for injunctive relief are not arbitrable, Plaintiff can seek to lift the stay in this Court, which can then proceed to the merits of Plaintiff's claims. *See Henry Schein*, 139 S. Ct. at 531 ("Arbitrators can efficiently dispose of frivolous cases by quickly ruling that a claim is not in fact arbitrable.").

If, on the other hand, the arbitrators rule that Plaintiff's claims for injunctive relief belong in arbitration, the arbitrators appear poised to incorporate those claims into the pending proceedings. The scheduling order in the arbitration contemplates that the parties "shall amend their statements of claim and counterclaims" by "(1) July 22, 2022 or (2) the expiration of seven days following a decision by the court on [Defendant]'s motion to compel arbitration and to dismiss" in this case. [39-1] at 1. Plaintiff can thus amend its arbitration claims to include the injunctive relief claims

19

it seeks here. Moreover, although the final arbitration hearing will not take place until January 2023, *see id.*, Plaintiff is not without remedy in arbitration to obtain interim relief. Rule 37(a) of the AAA Commercial Arbitration Rules permits the arbitrator to "take whatever interim measures he or she deems necessary, including injunctive relief." Am. Arb. Assoc., *Commercial Arbitration Rules and Mediation Procedures* 13 (2016), https://adr.org/sites/default/files/Commercial%20Rules.pdf.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss and compel arbitration [28] and stays this case pending arbitration. Plaintiff's motion for summary judgment [40] is denied without prejudice.

E N T E R:

Dated: July 20, 2022

MARY M. ROWLAND
United States District Judge