UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Telephone USA Investments, Inc. <br><br> Plaintiff, <br><br> v. <br><br> Lumen Technologies, Inc., <br><br> Defendant. | Case No. 22-cv-2260 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Defendant Lumen Technologies, Inc. filed a motion to lift stay and confirm [51] an arbitration award issued by an arbitration panel in its favor and against Plaintiff Telephone USA Investments, Inc. Plaintiff opposed the motion and cross-moved to vacate or modify the arbitration award. [64, 65]. For the reasons explained below, this Court grants Defendant's motion to confirm [51] and denies Plaintiff's cross-motion to vacate [64].

I. Background

A. Subject Matter Jurisdiction

Initially, this Court briefly addresses its jurisdiction over this matter.[1] Defendant Lumen brings this motion under the Federal Arbitration Act (FAA), which authorizes it to petition this Court to confirm an arbitration award. *See Badgerow v.*

---

[1] Lumen argues this Court has subject matter jurisdiction over the dispute [51]; Investments does not dispute this. [65].

1

*Walters*, 142 S. Ct. 1310, 1316 (2022). However, a court must still have "an 'independent jurisdictional basis' to resolve the matter." *Id.* at 1314 (quoting *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). An independent jurisdictional basis exists if a petition to confirm arbitration shows that complete diversity exists, or in other words, "that the contending parties are citizens of different States (with over $75,000 in dispute)." *Id.* at 1316.

Lumen is a Louisiana corporation that also maintains its principal place of business in Louisiana [31], making Lumen a Louisiana citizen. 28 U.S.C. § 1332(c)(1). Plaintiff Telephone USA Investments (Investments) is incorporated in Delaware and maintains a principal place of business in Illinois, establishing its citizenship in both Delaware and Illinois. [31]. Therefore, complete diversity exists, and the amount-in-controversy requirement is also satisfied. *See* [51-1] at 12-13. This Court accordingly has jurisdiction to adjudicate Lumen's motion to confirm arbitration. *Badgerow*, 142 S. Ct. at 1316.

    **B.**    **Factual History**

Between August 1999 and September 2000, the parties forged a business partnership along with two individual investors under the name Telephone USA Wisconsin, LLC (Telephone USA), executing a Limited Liability Company Agreement (Wisconsin LLC Agreement), [65-3], a Promissory Note in the amount of $2,125,000 to be enforced by Defendant against Plaintiff (Note), [65-1] and a Pledge Agreement securing Plaintiff's obligations under the note (Pledge Agreement) [65-2].

2

In July 2002, the members of Telephone USA restructured the partnership. [31] ¶ 8. They formed a new holding company, Telephone USA Holdings, LLC (Telephone USA Holdings), along with a new operating agreement (Holdings LLC Agreement). *Id.* After buying out the individual investors' ownership stakes in 2018, *id.* ¶ 12, Lumen sold its interest in Telephone USA to Connect Holding, LLC, an affiliate of Apollo Global Management in August 2021. *Id.* ¶ 20.

On December 8, 2021, Lumen initiated AAA arbitration proceedings pursuant to an arbitration clause in the Holdings Agreement, seeking to recoup an overpayment to Investments in the amount of $3,145.800.00 made in December 2019. [31-3] at 3; [31] ¶ 32. Lumen brought claims of breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and "money had and received." [31-3] at 4–7; [51-4] at 4. Investments asserted counterclaims concerning Lumen's mismanagement of distributions, appointments to the board of directors, and a breach of the implied covenant of good faith and fair dealing. *Id.*

### C. Procedural History

On April 29, 2022, Investments sued Lumen for declaratory and injunctive relief for a right-of-first-refusal to the Apollo sale, as well as declaratory judgment and injunctive relief related to the failed appointment of a board member of Telephone USA Holdings (Investments' amended complaint was filed in June 2022). [1, 31].[2] Lumen filed a motion to dismiss or stay the case and compel resolution of Investment's claims through the ongoing arbitration. [28]. Investments opposed the

---

[2] This Court previously denied Lumen's motion to dismiss for lack of personal jurisdiction. [23].

motion, arguing its claims were not arbitrable. [38]. On July 20, 2022, this Court granted Lumen's motion to stay pending the resolution of arbitration proceedings. [44]. This Court found that the arbitration provision in the Holdings Agreement applied to Investment's claims before the Court and exhibited the parties' "clear and unmistakable intent to delegate arbitrability" to an arbitrator. *Id.* at 11, 14.

In an order issued August 30, 2022, the arbitration panel deemed each party's respective claims arbitrable. [51-4] On September 29, 2022, the panel resolved various claims with a summary adjudication order. [51-3]. The panel held a final in-person hearing on the remaining claims in January 2023 in Dallas, Texas. [51-1] at 3. It issued a Final Award on March 22, 2023. [51-1]. The panel awarded relief to Lumen, finding that Investments breached contract in failing to return the overpayment (Claim 1), and the failure to pay was a default entitling Lumen to the full amount owed on the Note and other rights and remedies under the Pledge Agreement (Claims 2 and 4). *Id.* at 7-10. In addition to declaratory relief, the panel awarded Lumen total monetary damages in the amount of $7,867,124.67, not including pre-judgment interest payments.[3] [51-1] at 12-13. The panel denied all of Investments' claims, including those brought before this Court. *Id.* at 10-12.

---

[3] The arbitrators' full award orders Investments to pay Lumens: 1) $3,412,000.00 in damages plus interest at the rate of 3% accruing from February 22, 2022 until the award is paid in full (accruing at $280.43/day); 2) $2,125,000.00 in damages plus i) interest at the published variable Chase Manhattan Prime Rate accruing from September 30, 2000 to December 24, 2019, and ii) interest at the contractual default interest rate of 12% accruing from December 25, 2019 until the award is paid in full (the 12% interest rate accruing at $698.63/day); 3) administrative fees and arbitrator compensation costs incurred by Lumens totaling $115,707.63; and 4) attorney's fees totaling $2,214,417.04. [51-1] at 12-13.

4

On March 31, 2023, Lumen moved to confirm the Final Award. [51]. Plaintiff cross-motioned to vacate, modify, or correct the Award. [65]. For the reasons herein, this Court confirms the arbitration award [51] and denies Investment's motion to vacate. [65].

## II. Legal Standard

Lumen seeks an order confirming its arbitration award under Section 9 of the FAA, which provides that a court "must" confirm an arbitration award unless it is "vacated, modified, or corrected as prescribed in Sections 10 and 11." 9 U.S.C. § 9. Section 10 lists grounds for vacatur, and Section 11 names those for modifying or correcting an award. 9 U.S.C. §§ 10, 11; *see also Hall*, 552 U.S. at 582.

Judicial review of arbitration awards "is tightly limited. Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022) (quoting *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020)); *see also Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021) (describing the "exceedingly narrow scope for judicial review of a final arbitral award"). Courts generally enforce arbitration awards so long as arbitrators do not exceed their delegated authority; this is "true even if the arbitrator's award contains a serious error of law or fact." *Standard Sec. Life Ins.*, 967 F.3d at 671 (quoting *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003)).

### III. Analysis

Lumen has moved to confirm the March 2023 arbitration award, while Investments has cross-moved to vacate the award arguing that the arbitrators exceeded the scope of their authority, misinterpreted the relevant contracts, and awarded damages to Lumen that amounted to double recovery. As discussed below, this Court will confirm the award because Lumen meets the Section 9 requirements for confirmation and Investments fails to demonstrate that vacatur is warranted.

#### A. Petitioner Meets Section 9 Requirements for Confirmation

Lumen meets the criteria for confirmation of the arbitrators' March award. Under Section 9, "at any time within one year after the award is made any party to the arbitration may apply to the court so specified . . . for an order confirming the award . . . and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

Here, Lumen timely filed its petition to confirm on March 31, 2023, just over one week after March 22, 2023 award. [51]. The parties' Agreement further provides that "[c]onfirmation of the award may be entered in any court having jurisdiction," *see* [31-1] at 46, and as discussed, this Court has jurisdiction. By statute, Lumen has met the requirements for confirmation, so this Court "must grant" the petition unless

it determines the award should be vacated, modified, or corrected. 9 U.S.C. § 9. The Court will now address Investments' arguments for vacatur and/or modification.

### B. Vacatur is Inappropriate

Investments moves for vacatur of the award under FAA Section 10(a)(4), which applies when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); *see* [65] at 8-9. A party seeking vacatur under Section 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). It is not enough for Investments to show that the arbitrators committed an error—even a serious error. *Id.* Rather, Investments must demonstrate that the arbitration panel "deliberately disregards what [it] knows to be the law." *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 567 (7th Cir. 2015) (quoting *Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250, 1254 (7th Cir.1994)). Investments argues that the arbitrators exceeded their authority in three ways.

First, Investments contends that the arbitrators exceeded their authority by hearing Lumen's Claims 2 and 4, which arose under the Note and Pledge Agreement. [65] at 9–11. Investments argues that the latter documents were distinct from either of the two LLC Agreements executed by the parties, placing the claims beyond the scope of the panel's arbitrable jurisdiction. *Id.* This Court does not agree. The arbitrators specifically determined that the Wisconsin LLC Agreement, the Note, and the Pledge Agreement, all dated September 29, 2000, were "part of the same transaction," and hence arbitrable. [51-4] at 5. This Court already concluded that the

parties "delegated all disputes relating to the contracts, including those of arbitrability, to the arbitrators." [44] at 10. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S. Ct. 524, 530, 202 L.Ed 2d 480 (2019). Here, where the parties exhibited a "clear and unmistakable intent for arbitrability to be decided by the arbitrators," [44] at 10, the Court declines to invade the panel's exclusive province.

Investments also argues that the Wisconsin LLC Agreement cannot support arbitrability because it was abridged by the later Holdings LLC Agreement. [65] at 10. That argument is a non-starter. The Note and Pledge Agreement prompted the creation of the business partnership that became Telephone Holdings USA, [31], and both LLC agreements contained identical arbitration clauses, [51-4] at 5. The arbitrators may, after all, consider any "body of . . . policy or law . . . incorporated in [the contract] by reference," *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC*, 768 F.2d 180, 185 (7th Cir. 1985). The components of the Wisconsin LLC transaction accordingly fall within the panel's broad purview to decide arbitrability.

Investments next argues that the arbitrators exceeded their authority and "ignored" the plain language of the Holdings LLC Agreement by granting Lumens rights to collateral that includes 50 of Investments' shares in Telephone USA Holdings. *See* [65] at 11-12. Investments insists that the Pledge Agreement only gave Lumens rights in shares issued to Investments by Wisconsin, not Telephone USA

8

Holdings. *Id.* The arbitrators, meanwhile, decided that the Pledge Agreement entitles Lumens to rights in collateral including "any hereinafter acquired collateral whether Respondent's interests arise by ownership, security interest, or claim." [51-1] at 10. After Telephone USA Holdings was created in 2002, the Panel concluded, "as a result of the corporate restructuring, the Collateral includes 50 of Respondent's 100 shares in Holdings." *Id.*

Investments' argument thus challenges the correctness of the arbitrators' factual findings and legal conclusions. But errors in the "arbitrator's interpretation of law or findings of fact do not merit reversal." *Eljer Mfg.*, 14 F.3d at 1254; *see Oxford Health Plans*, 569 U.S. at 569; *see also, e.g.*, *Nosbaum v. J.P. Morgan Sec. LLC*, No. 17 C 6202, 2018 WL 3626112, at *3 (N.D. Ill. July 30, 2018) ("A court may not interfere with an arbitrator's findings of fact merely because it disagrees with them, otherwise the purpose of arbitration proceedings as speedy and cost-effective dispute resolution options would be undermined."). So long as the arbitrators base the award in *any* interpretation of the contract, correct or not, this Court is bound to uphold it. *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013). Vacatur is only on the table if there is "no possible interpretive route to the award." *United States Soccer Fed'n, Inc. v. United States Nat'l Soccer Team Players Ass'n*, 838 F.3d 826, 832 (7th Cir. 2016) (quoting *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505–06 (7th Cir. 1991)). Here, the arbitrators clearly interpreted the parties' contract to extend Lumens' right in collateral to

shares in Telephone Holdings USA. *See* [51-1] at 10. That is enough for this Court to deny vacatur.

Investments similarly takes issue with the arbitrators' decision to award damages with a retroactive default interest rate, arguing that this, too, is an incorrect reading of the parties' contract. [65] at 12-14. Again, this Court must defer to the arbitrators' construction of the contract. The panel calculated the relevant interest rates and default date after a review of the Note, Pledge Agreement, and Holdings LLC Agreement. *See* [51-4] at 10. Once this Court finds that the arbitrators' decision is grounded in the parties' contract, the inquiry ends.

Finally, Investments argues the award should be modified to prevent double recovery on Claims 2 and 4. The arbitrators awarded Lumens the principal amount of the Note and interest, as well as rights and remedies to collateral including 50 of Investments' shares in Telephone USA Holdings. Investments contends that giving Lumens rights to those shares amounts to a "windfall" because the valuation of the shares "likely would exceed $25 Million." [65] at 13-14. Section 11 of the FAA permits modification of an award to prevent an unjust miscalculation, such as double recovery. *Eljer Mfg.*, 14 F.3d at 1254. Here, though, even if Investments' valuation is accurate, the arbitrators did not grant Lumens immediate access to Investments' shares in Telephone USA Holdings. Rather, the award merely confirms that Lumens has the right to retain collateral, including the shares, if Investments does not make good on its payment of damages. *See* 51-4 at 10. And as Investments itself acknowledges, under the Louisiana Commercial Code that governs the Pledge

10

Agreement, any surplus from Lumens' possession of collateral must be accounted for and repaid to Investments. *See* [65] at 16; [65-2] § 4.2(e) (Pledge Agreement provisions about collateral retention cite Louisiana law); La. Stat. Ann. § 10:9- 615(d)(1) ("[T]he secured party shall account to and pay a debtor for any surplus."). In sum, the arbitrators' award contains no double recovery and thus should not be modified.

## IV. Conclusion

This Court finds that the arbitrators' Final Award did not exceed the panel's authority and resolved the claims pending before this Court. For the reasons explained above, this Court grants Defendant Lumen's motion to lift the stay and confirm the arbitration award [51] and denies Plaintiff Investments' cross-motion to vacate, modify, or correct the arbitration award [64]. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff in the amount of $7,867,124.67 plus the appropriate pre-interest payments. Civil case terminated.

E N T E R:

Dated: September 21, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

11